# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2425

_____

| | | |
|---|---|---|
| Linn Farms and Timber Limited Partnership, | * * * | |
| Appellant, | * * | Appeal from the United States District Court for the Eastern |
| v. | * * | District of Arkansas. |
| Union Pacific Railroad Company; Chesapeake Exploration, LLC, | * * * * | |
| Appellees. | * | |

_____

Submitted: April 12, 2011
Filed: November 15, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Union Pacific Railroad Company ("Union Pacific"), formerly Missouri Pacific Railroad Company ("Missouri Pacific"), owned mineral rights to three parcels of land in Arkansas until 2005 when the rights were forfeited due to tax delinquency. Linn Farms and Timber Limited Partnership ("Linn Farms"), as the surface rights owner to the parcels, purchased the mineral rights from Mark Wilcox, the Arkansas Commissioner of State Lands ("Commissioner"). Thereafter, Union Pacific, unaware of the forfeiture, leased the mineral rights to Chesapeake Exploration, LLC ("Chesapeake Exploration"), who then recorded the lease. Discovering the lease,

Linn Farms sued to quiet title to the mineral rights. Linn Farms, Union Pacific, and Chesapeake Exploration each filed a motion for summary judgment. The district court[1] denied Linn Farms's motion and granted summary judgment to Union Pacific and Chesapeake Exploration. It concluded the sale of the mineral rights by the state was invalid because the Arkansas Commissioner of State Lands failed to provide Union Pacific adequate notice of the impending forfeiture in violation of Union Pacific's due process rights. Linn Farms appeals and we affirm.

I

The parties dispute the ownership of mineral rights to three parcels of land located in Van Buren County, Arkansas. Linn Farms, an entity owned by Danny and Linda Linn, owns the surface rights to each of the parcels. Missouri Pacific, originally headquartered in Fort Worth, Texas, previously owned the mineral rights, but at some point before the relevant dates of this case it merged with Union Pacific, headquartered in Omaha, Nebraska. As a result, the mineral rights became the property of Union Pacific. However, Union Pacific failed to inform the Van Buren County Assessor's Office of either the merger or the resulting change in mailing address.

On June 26, 2003, the Van Buren County Tax Collector certified to the Commissioner, that the mineral rights, which were still recorded as being owned by Missouri Pacific, were forfeited to the State of Arkansas for nonpayment of taxes. The Commissioner sent a notice to Missouri Pacific on October 20, 2003, informing it the mineral rights would be sold in two years due to tax delinquency if the rights were not redeemed. The Commissioner sent the notice to Fort Worth, Texas, but because Missouri Pacific had moved to Omaha, Nebraska, the notice was returned

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

"NOT DELIVERABLE AS ADDRESSED-UNABLE TO FORWARD." Two years later, on October 19, 2005, the Commissioner sent another letter to Missouri Pacific, stating the mineral rights had been certified to the state due to tax delinquency, the surface owner of the parcels intended to purchase the mineral rights, and Missouri Pacific had until November 22, 2005, to redeem its rights. Like the first notice, the second notice was addressed to Fort Worth and was also returned "NOT DELIVERABLE AS ADDRESSED-UNABLE TO FORWARD."

During this same time frame, however, the Commissioner did successfully provide Missouri Pacific notice on properties in other counties. On October 16, 2003, and again on February 14, 2006, the Commissioner sent notices to Missouri Pacific at the Omaha address regarding tax delinquencies on a property located in Faulkner County, Arkansas. In January 2004, the Commissioner also sent a tax delinquency notice to Missouri Pacific at the Omaha address for property located in Woodruff County, Arkansas. Jerry Bradshaw, an employee of the Commissioner dealing exclusively with tax delinquencies on mineral rights and the one who sent Missouri Pacific's 2005 notice, indicated some notices were sent to the Omaha address while others were sent to Fort Worth because the Commissioner keeps separate records for mineral rights and redemption deeds and each had different addresses. Bradshaw explained the notices reaching Missouri Pacific came from the Office of the Land Commissioner, which deals with redemption deeds and is located in a different physical location from Bradshaw's office, which focuses on mineral rights. Bradshaw indicated his office did not know of Missouri Pacific's merger with Union Pacific and the change of address until 2008 even though the Office of the Land Commissioner knew as early as 2003.

Because both notices were sent to the wrong address, Union Pacific failed to redeem its mineral rights by November 22, 2005, and the Commissioner proceeded to sell the rights. Linn Farms paid the delinquent tax obligation totaling $160.76 and

the Commissioner issued Linn Farms the mineral rights deed for each of the parcels. On December 5, 2005, the Linns recorded the deeds with Van Buren County.[2]

Unaware of the forfeiture, Union Pacific proceeded as the owner of the mineral rights, executing an oil and gas lease with Chesapeake Exploration on February 25, 2008, which Chesapeake Exploration filed with Van Buren County on April 9, 2008. Linn Farms discovered the lease and brought suit against Union Pacific and Chesapeake Exploration. Linn Farms sought to quiet title in its favor and also sought damages for intentional clouding of its title in violation of Ark. Code Ann. § 5-37-226(a). The parties filed cross-motions for summary judgment. Linn Farms moved for judgment declaring it the rightful owner of the mineral rights based on the deeds issued by the Commissioner. Union Pacific's summary judgment motion argued the deeds relied on by Linn Farms were invalid because the Commissioner failed to comply with the due process requirement of notifying Union Pacific of its tax delinquency and impending forfeiture before it issued new deeds. Chesapeake Exploration's motion adopted the position of Union Pacific and further asserted its filing of the lease did not violate Arkansas law by intentionally clouding title.

The district court denied Linn Farms's motion for summary judgment but granted Union Pacific's and Chesapeake Exploration's motions, finding the Commissioner violated Union Pacific's due process right by failing to provide adequate notice of the tax delinquency and forfeiture and, given Linn Farms's deeds were invalid, the district court found Chesapeake Exploration could not have clouded

---

[2]The Commissioner, having erroneously issued the deeds to Danny and Linda Linn personally instead of to Linn Farms, issued corrected deeds on June 18, 2009.

Linn Farms's title.[3]  Linn Farms appeals contending the Commissioner's notice to Union Pacific comported with the requirements of due process.

## II

Linn Farms argues the district court erred in granting summary judgment in favor of Union Pacific and Chesapeake Exploration because the notice provided to Union Pacific was constitutionally sufficient.  Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  We review a district court's grant of summary judgment de novo, "'drawing all reasonable inferences, without resort to speculation, in favor of the nonmoving party.'"  Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011) (internal quotation marks and citation omitted).  Furthermore, whether the notice provided by the Commissioner under state law was adequate to satisfy due process is a question of law, which we also review de novo.  See Stauch v. City of Columbia Heights, 212 F.3d 425, 431 (8th Cir. 2000).

The Due Process Clause of the Fourteenth Amendment requires the government to provide owners "notice and opportunity for hearing appropriate to the nature of the case" before it may take property as a result of unpaid taxes.  Mullane v. Cent. Hanover Bank & Trust, Co., 339 U.S. 306, 313 (1950).  The government does not need to provide actual notice, Dusenbery v. United States, 534 U.S. 161, 170 (2002), but the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane, 339 U.S. at 314.

---

[3]The district court also rejected a statute of limitations argument raised by Linn Farms, determining the statute of limitations under Arkansas law had not yet run on Union Pacific's ability to challenge the tax sale.  This issue was not appealed.

The Supreme Court previously addressed the notice requirement of the due process clause in another case involving a tax forfeiture in Arkansas, Jones v. Flowers, 547 U.S. 220 (2006).  Jones owned a house but failed to pay the property taxes.  As a result, the state certified his property as delinquent.  Id. at 223.  The Arkansas Commissioner of State Lands mailed a certified letter to Jones at the property's address to inform him of the tax delinquency and the right to redeem the property, but the letter was returned as "unclaimed."  Id. at 223-24.  Two years later, the Commissioner published a notice of public sale in the local paper, to which Linda Flowers responded with an offer to purchase the property.  Id. at 224.  In an attempt to inform Jones that his property would be sold to Flowers if he did not pay his taxes, the Commissioner sent a second notice by certified mail to Jones at the property's address.  Id.  Again, the notice was returned as "unclaimed."  Id.

Subsequently, Flowers purchased the house.  She then delivered an unlawful detainer notice to the property.  Id.  The notice was served on Jones's daughter who was living in the house at the time, and she notified Jones of the sale.  Id.  Jones then filed suit against the Commissioner, arguing the Commissioner failed to provide adequate notice of the forfeiture in violation of his due process rights.  Id.

The United States Supreme Court, holding in favor of Jones, concluded when a notice is returned unclaimed, the government is required to take additional reasonable steps to attempt to provide notice before a tax sale.  Id. at 225.  "'[W]hen notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'"  Id. at 229 (quoting Mullane, 339 U.S. at 315).  To illustrate this point, the Court explained, "[n]o one desirous of actually informing [a property owner] would simply shrug his shoulders . . . and say 'I tried'" if, for instance, the Commissioner had "prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain."  Id.  Consequently, the Court determined after the Commissioner learned the

original notice to Jones was returned unclaimed, the Commissioner was able to take some additional reasonable steps, such as resending the notice via regular mail or posting a notice on the door of the residence, but failed to do so. Id. at 225.

In the present case, the Commissioner prepared and sent two letters to Missouri Pacific, but both were returned and marked "NOT DELIVERABLE AS ADDRESSED-UNABLE TO FORWARD." The Commissioner knew neither letter was actually received by the intended recipient and thus was aware Missouri Pacific, under the new name Union Pacific, had no actual notice of the impending forfeiture. With knowledge the notices were undelivered, the Commissioner should have taken any reasonable additional steps available to apprise Union Pacific of the impending forfeiture. See id.

The Commissioner is only required to take these additional steps, however, if there are reasonable ones available. See id. at 234 ("[I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, [the Commissioner] cannot be faulted for doing nothing."). In Jones, the Court reasoned when a certified letter is returned unclaimed, reasonable additional steps based on the new information the letter was unclaimed included sending notice via regular mail rather than certified mail or posting the notice on the front door. Id. at 234-35. These additional steps are not directly applicable to the instant case, though, because unlike in Jones, the notices here were for mineral rights, not occupied property, and were sent to an incorrect address, not merely left unclaimed.

Nevertheless, we can glean from the import of Jones whether any reasonable additional steps existed in the present case. As the Court explained in Jones, "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." Id. at 234. With the letters in Jones being unclaimed, the new information revealed no one was willing to claim the letters, not necessarily the address was incorrect. Thus, taking fairly simple measures to get notice in the hands

of the person residing on the property amounted to reasonable additional steps required to provide due process in Jones. In contrast, the letters to Missouri Pacific were returned as undeliverable as addressed, indicating an incorrect address. Thus, any further correspondence with the known address would not have been likely to apprise Missouri Pacific of the impending forfeiture. Instead, having learned the address was incorrect, the next step should have been to locate a new, correct address for Missouri Pacific.

The record indicates after he received the returned notice, Bradshaw did follow up by asking various land men[4] who had been trying to deal with Missouri Pacific whether they had an updated address for Missouri Pacific in Fort Worth, Texas. The inquiries were unsuccessful. We note these inquiries amounted to at least one reasonable additional step which could have been, and was taken, by the Commissioner to provide Missouri Pacific notice. However, we conclude this was not sufficient to meet due process because Missouri Pacific was still without notice and other reasonable additional steps were still available.

First, we agree with the district court as to one additional step being an internal inquiry as to "whether employees of the Commissioner's office had a correct address for Missouri Pacific." Appellant's Add. at 275. The Commissioner had sent several other notifications to Missouri Pacific using the proper Omaha address during the same time period the notices in the present case were sent and returned. Thus, an inquiry within the Commissioner's office could have revealed Missouri Pacific's correct address, other counties in which Missouri Pacific held land which might have led to the correct address, or even the fact Missouri Pacific had merged with Union Pacific, thus revealing Union Pacific's address would be relevant for sending notice. Linn Farms rejects this option stating it "is built on the fallacy that every person who

_____

[4]According to Bradshaw, land men research properties in the courthouses and also are responsible for acquiring signatures on leases.

has worked in the Land Commissioner's office since 2003 has total recall of every document in the office and instantly transmitted that knowledge to every other employee of the office." Appellant's Br. at 13. As we understand Linn Farms's argument, it contends an internal inquiry would likely be unsuccessful because it is unlikely employees of the Commissioner's office will instantly recall if they had previously sent a notice to Missouri Pacific's correct address. However, we note neither Jones nor this court has ever suggested an additional step is reasonable only if it will necessarily result in information that will lead to actual notice being provided. It is not relevant whether an internal inquiry would have necessarily revealed Missouri Pacific's correct address. We are concerned only with whether such an inquiry would be an additional step "one desirous of actually informing the absentee might reasonably adopt to accomplish [notice]." Jones, 547 U.S. at 229. Similar to Bradshaw's inquiry to the land men as to whether they had an updated address, there is no certainty an internal inquiry would have resulted in obtaining the correct address, but given the Commissioner did have the correct address on file in some of Missouri Pacific's records, and given the office had recently mailed notices to Missouri Pacific's correct address, such an inquiry might have revealed the Omaha address.

Linn Farms further rejects an internal inquiry because it claims it was not reasonable given the other Commissioner's offices are in different physical locations. The mere requirement of travel did not preclude the Court in Jones from suggesting the reasonable additional step of physically posting notice on the door of the residence on the property to be forfeited. Id. at 235. Similarly, we do not find it unreasonable to suggest the staff within the Commissioner's office can communicate intra-office even if the offices span various physical locations. Just as Bradshaw was able to locate the land men at different locations, he could also travel to another office to make a similar inquiry of others in the Commissioner's office. Certainly, if the distances were prohibitive, either an email or phone call could have sufficed. We agree with the district court that even if an employee who knew of Missouri Pacific's

correct address "was in a different department and in a different physical location from Bradshaw, making an internal inquiry still would have been reasonable and practical—it is what a person who actually desired to inform mineral rights owner of an impending tax sale would do." Appellant's Add. at 275.

In conjunction with an internal inquiry, the Commissioner could have also performed a search of the Commissioner's electronic records to determine whether another address for Missouri Pacific was on file. The Commissioner's records of all properties certified as delinquent are stored electronically and include the last-known address for the owner on record. However, a cross-county search of the system for a particular owner, such as Missouri Pacific, is not possible because the system records are sorted by county. Consequently, to determine whether Missouri Pacific has an address other than the one on file in Van Buren County, the Commissioner would have to execute a search in each county's system individually. Linn Farms contends the Commissioner cannot be required to engage in such an exhaustive search of each county's internal records because it is too complex, too burdensome, and therefore is unreasonable. Viewing the record in the light most favorable to Linn Farms, a full search of the Commissioner's records does appear to be beyond the scope of what we would define as a reasonable additional step. However, the existence of these electronic records bolsters the reasonableness of an internal inquiry. Had the Commissioner inquired within its own office as to whether anyone else had encountered a working address for Missouri Pacific, it is possible that while an individual might not recall a specific address, the person might recall a county in or property for which Missouri Pacific was recorded as an owner. As Bradshaw detailed in his deposition, Missouri Pacific owned numerous properties in the various counties and several had been certified as delinquent. Thus, there is a realistic possibility another employee in the Commissioner's office would recall other counties containing records with Missouri Pacific's correct address. With this information, the Commissioner could then access the system, based on the relevant county, and locate Missouri Pacific's correct address. Thus, a search of the

Commissioner's records, in part, could be a reasonable additional step under certain circumstances.

Finally, we suggest the Commissioner could have performed an internet search to locate an updated address. Bradshaw conceded in his deposition that upon learning an address is incorrect, in addition to talking with land men, he also occasionally searches the internet.[5] Bradshaw Dep. at 12, 30-31. He considers such a search to be "just [the] normal course of business trying to find a good address." Id. at 96. An internet search is a relatively easy option in comparison to the allegedly onerous search of the government's own records and thus we conclude it is a reasonable additional step the Commissioner could have taken.

In reaching this conclusion, we are mindful of the language in Jones suggesting an "open-ended search" was not required of the Commissioner in that case. 547 U.S. at 235. The Supreme Court rejected Jones's argument insisting the Commissioner should have conducted an "open-ended search" such as searching the phone book or government income tax records. However, the Court qualified this conclusion by explaining,

> the return of Jones' mail marked "unclaimed" did not necessarily mean [the address] was an incorrect address; it merely informed the Commissioner that no one appeared to sign for the mail before the designated date on which it would be returned to the sender. An open-ended search for a new address . . . imposes burdens on the State

---

[5]The record suggests Bradshaw may have conducted an internet search for Missouri Pacific, but the record is unclear as to any details from which we can reasonably infer such a search was actually completed or whether the search was sufficient to comport with due process. See Haigh, 632 F.3d at 468 (stating that although we take all reasonable inferences in favor of the non-moving party, we may not resort to speculation).

significantly greater than the several relatively easy options outlined above.

Id. at 236. The Court's decision to reject an open-ended search as a reasonable additional step in Jones was premised on the facts of the case, namely the fact the unclaimed letter did not suggest the address was incorrect and thus a search for a new address would be irrelevant as well as unduly burdensome and unnecessary in light of the simple, low-cost option of sending a letter via regular mail or posting a notice on the front door. The mere fact an "open-ended search" such as an internet search was more burdensome than the alternatives in Jones does not necessarily mean such a search has been categorically rebuked. Thus, we do not agree with Linn Farms's argument as to Jones outright rejecting any additional open-ended searches as too onerous because we conclude the rejection was limited to the facts of the case. And, in a case such as the present, the Commissioner knew the address was incorrect. He knew he should attempt to locate an updated address, and an internet search is a particularly law-cost, low-burden option for doing so. Even more, as opposed to Jones, Missouri Pacific is a business and it is presumably easier to find an address for a business on the internet than for an individual person. We therefore suggest the Commissioner could have engaged in an internet search as a reasonable additional step in locating Missouri Pacific's correct address in order to provide adequate notice.

Ultimately, we note it is not this court's duty "'to prescribe the form of service that the [government] should adopt,'" id. at 238 (alternation in original) (quoting Greene v. Lindsey, 456 U.S. 444, 455 n.9 (1982)), but rather it is sufficient to conclude additional reasonable steps were available but were not taken. Id. ("It suffices for present purposes that we are confident that additional reasonable steps were available for Arkansas to employ before taking Jones' property."). Taking into account the facts of this situation and the precedential value of Jones, we hold the Commissioner could have taken reasonable additional steps that did not impose a significant burden in order to inform Missouri Pacific—and ultimately Union

Pacific—of the impending forfeiture. The Commissioner's failure to do so left Union Pacific "'no better off than if the notice had never been sent.'" Id. at 230 (quoting Malone v. Robinson, 614 A.2d 33, 37 (D.C. App. 1992)).

On a final note, we turn to Linn Farms's argument as to whether we should reject Union Pacific's challenge to the adequacy of the notice because Union Pacific "has not identified a single instance of a departure from the requirements of Arkansas law. . . . Everyone did what they were supposed to do except the railroad failed to provide the correct address." Appellant Br. at 15-16. The Commissioner did comply with Arkansas law requiring the Commissioner to notify a tax-delinquent property owner of his "right to redeem by paying all taxes, penalties, interest, and costs" by certified mail to the owner's last known address. Ark. Code Ann. § 26-37-301(a)(1). "If the notice by certified mail is returned undelivered . . . the Commissioner of State Lands shall send a second notice to the owner . . . at any additional address reasonably identifiable through the examination of the real property records" such as deeds, mortgages, or other recorded documents filed with the county where the property is located. Id. § 26-37-301(a)(4). Even though the Commissioner fully complied with Arkansas law, mere compliance with a state's notice statute may not be sufficient to satisfy the constitutional obligation of providing adequate notice as required under Mullane and the Due Process Clause. See Jones, 547 U.S. at 232 (rejecting the state's argument that compliance with Arkansas's notice statute is necessarily sufficient to satisfy due process). Even more, Missouri Pacific's failure to update its address is not dispositive. The Court in Jones clarified, "[t]he Commissioner does not argue that Jones' failure to comply with a statutory obligation to keep his address updated forfeits his right to constitutionally sufficient notice, and we agree." Id. As a result, it is irrelevant that Union Pacific failed to show the Commissioner did not comply with Arkansas law, and it is also irrelevant either Missouri Pacific or Union Pacific failed to update the address with the county. Instead, we conclude, based on the analysis stated above, the notice provided by the

-13-

Commissioner was inadequate under the circumstances of the case even though it complied with Arkansas law.

## III

We affirm the district court's decision granting summary judgment in favor of Union Pacific and Chesapeake Exploration.

COLLOTON, Circuit Judge, dissenting.

The question presented on this appeal is whether the State of Arkansas deprived Union Pacific Railroad Company of property without due process of law when the Commissioner of State Lands forfeited and sold mineral rights owned by Union Pacific. Because the Commissioner gave notice that was reasonably calculated to apprise Union Pacific of a tax delinquency on the property, an impending forfeiture of the property to the State, and a forthcoming sale of the mineral rights, there was no violation of the Due Process Clause of the Fourteenth Amendment. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

This case involves mineral rights in certain parcels of land in Van Buren County, Arkansas. Under Arkansas law, "[w]hen severed mineral interests are forfeited to the state and conveyed by certification to the Commissioner of State Lands for nonpayment of property taxes, title to the severed mineral interests shall vest in the State of Arkansas in the care of the Commissioner of State Lands." Ark. Code Ann. § 26-37-314(a)(1). The Commissioner is then required by statute to "notify the owner of record by certified mail at his or her last known address." *Id*. § 26-37-314(a)(2). After a redemption period, the Commissioner is directed to sell the mineral rights to the surface owners if they opt to purchase them. Id. § 26-37-314(b)(1).

-14-

Union Pacific, by virtue of a merger with Missouri Pacific Railroad Company, owned mineral rights in parcels of land in Van Buren County.  It is undisputed that Union Pacific failed to pay delinquent taxes on the property, and that the Commissioner sent two notices of forfeiture and forthcoming sale of mineral rights to Missouri Pacific at the address last recorded with the Van Buren County Collector. Under Arkansas law, Union Pacific had an obligation to furnish its correct address to the county collector of taxes, Ark. Code Ann. § 26-35-705, but it failed to do so. As a result, the Commissioner mailed the notices to a former address of Missouri Pacific.  The notices were returned with markings that the letters were not deliverable as addressed, and that the postmaster was unable to forward them.  The Commissioner later sold the mineral rights to the surface owners, Linn Farms and Timber Limited Partnership.

Relying on *Jones v. Flowers*, 547 U.S. 220 (2006), the court reasons that the Due Process Clause required the Commissioner to take additional steps to apprise Union Pacific of the impending forfeiture after the notices were returned as undeliverable.  But this conclusion overstates the narrow holding of *Jones*.  "What steps are reasonable in response to new information depends upon what the new information reveals."  *Id*. at 234.  The certified letter in *Jones* was returned unclaimed, and the returned letter did not reveal whether the address of record was incorrect.  *Id*. at 234, 236.  It was as though the Commissioner had simply "watched as the departing postman accidentally dropped the letters down a storm drain."  *Id*. at 229.  Under those circumstances, the Court held that the State was required to take another step, such as to send the notice again by regular mail or to post notice on the front door of the property.  *Id*. at 235.

Here, the Commissioner knew that the postmaster had attempted to deliver the letters, but that the address was incorrect, and that the letters could not be forwarded. At that point, *Jones* demonstrates, the Due Process Clause did not require "[a]n open-ended search for a new address—especially when the State obligates the taxpayer to

keep his address updated with the tax collector." *Id*. at 236. This is so even when a new address could be located through such simple means as looking in the phone book or examining readily available government tax records. *Id*. at 235-36. The Court distinguished between an "open-ended search" for a new, correct address (not required), and a renewed effort to make delivery at an address of record that may have been correct (required). This distinction turned not on the degree of effort involved—it may be easier to look up a new address in a phone book than to travel to an address of record and post a notice on the door—but on the nature of the effort.

The court's holding that "the next step should have been to locate a new, correct address for Missouri Pacific," *ante*, at 8, is contrary to the limitation of *Jones*. Just as the Constitution did not require the Commissioner in *Jones* to undertake simple measures to find a new, correct address for the taxpayer, the Due Process Clause did not require the Commissioner here to make internal inquiry of an indefinite number of state employees at different locations, to search the agency's electronic records, or to conduct an Internet search to locate an updated address for Missouri Pacific. Once the Commissioner determined that notice had been sent to the last known address of Missouri Pacific, that the address was incorrect, and that the letters could not be forwarded, the Commissioner had discharged his obligation under the Due Process Clause by reasonably attempting to provide actual notice. *See Dusenbery v. United States*, 534 U.S. 161, 169-70 (2002). The State's forfeiture and subsequent sale of the mineral rights to Linn Farms thus complied with the Constitution.

For these reasons, I would reverse the judgment of the district court.

_____