**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-2490**

———————

SNIDER INTERNATIONAL CORPORATION, trading as Eastover Auto
Supply; MARK CRANFORD; STAN DERWIN BROWN; AL GOYBURU,

        Plaintiffs - Appellants,

    v.

TOWN OF FOREST HEIGHTS, MARYLAND; TOWN OF RIVERDALE PARK,
MARYLAND,

        Defendants – Appellees,

    and

MAYOR AND COUNCIL OF THE TOWN OF RIVERDALE PARK, MARYLAND,

        Defendant.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  J. Frederick Motz, Senior District
Judge. (8:12-cv-01248-JFM)

———————

Argued: October 29, 2013        Decided: January 7, 2014

———————

Before KING, GREGORY, and AGEE, Circuit Judges.

———————

Affirmed by published opinion.  Judge Gregory wrote the opinion,
in which Judge King and Judge Agee joined.

———————

**ARGUED**: James S. Liskow, DECARO, DORAN, SICILIANO, GALLAGHER &
DEBLASIS, LLP, Bowie, Maryland, for Appellants.  Kevin Bock
Karpinski, KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland,

for Appellees. **ON BRIEF:** Stephen H. Ring, Gaithersburg, Maryland; Christopher R. Dunn, DECARO, DORAN, SICILIANO, GALLAGHER & DEBLASIS, LLP, Bowie, Maryland, for Appellants. Sandra D. Lee, KARPINSKI, COLARESI & KARP, Baltimore, Maryland, for Appellees.

--------------------

GREGORY, Circuit Judge:

Maryland permits localities to employ "speed monitoring systems," better known as speed cameras, for enforcing traffic laws. Maryland's speed camera program imposes civil penalties for exceeding the speed limit by twelve miles per hour. During several years, two Maryland towns issued a number of electronically-signed speeding citations by first-class mail. The issues on appeal are whether the use of first-class mail or the use of the citations as evidence at trial violate due process. Finding that they do not, we affirm.

I.

Snider International Corporation, Mark Cranford, Stan Brown, and Al Goyburu ("Appellants") filed a putative class action challenging the constitutionality of the issuance and form of automated speeding citations.[1] Appellants received citations from the Town of Forest Heights, Maryland and the Town of Riverdale Park, Maryland ("Appellees"). The citations were issued under Maryland's speed camera program.

_____

[1] The putative class action never challenged the constitutionality of the speed camera program.

3

A.

Since 2006, the Maryland General Assembly has permitted the use of "speed monitoring systems" throughout designated areas within the state. See Md. Code Ann., Transp. § 21-809. After a pilot run in Montgomery County, the speed camera program expanded statewide in October 2009. Under Maryland Transportation Article § 21-809, speed cameras may be placed in school zones, in certain residential areas in Montgomery County, and near certain colleges in Prince George's County.[2] § 21-809(b)(1). Speed cameras produce electronically-recorded images of vehicles traveling in excess of the speed limit by at least twelve miles per hour. § 21-809(a)(5). The automated citations carry a civil penalty no greater than forty dollars. § 21-809(c)(2). Nonpayment of the penalty and failure to contest the citation amounts to an admission of civil liability and may result in suspension or nonrenewal of the recorded vehicle's registration. § 21-809(g).

The General Assembly further prescribed the form and contents of these automated citations. The appropriate agency mails the citation to the registered owner of the recorded

---

[2] Speed cameras are also authorized in highway work zones, but a different statute governs such use. See, Md. Code Ann., Transp. § 21-810. All citations pertinent to this appeal issued from cameras authorized by Section 21-809.

4

vehicle.  § 21-809(d)(1).  An "agency" is either the local police force or, where a locality lacks its own police force, the entity charged with administering the automated citations. § 21-809(a)(2).  The citation must contain the registered owner's information; the time, date, and location of the violation; the recorded image; the penalty amount; and "a signed statement by a duly authorized law enforcement officer employed by or under contract with an agency" that the vehicle was driven in an unlawful manner.  § 21-809(d)(1).

A citation recipient may elect a trial in the District Court of Maryland in lieu of paying the penalty.  § 21-809(d)(5).  The recipient may present for consideration any defenses to liability that the district court deems pertinent. § 21-809(f)(1).  The court determines liability using a preponderance of the evidence standard.  § 21-809(e)(3).  At trial, the agency may introduce the citation as evidence without any corroborating evidence or authentication by the systems operator.  § 21-809(e)(1).  To do so, the agency must submit a certificate affirming both a violation and satisfaction of certain requirements under § 21-809(b).  § 21-809(e)(1).  Under Subsection (b), the following documents must be kept on file and admitted into evidence at trial: the systems operator's certificate of training, a daily log showing that the systems operator successfully completed a self-test prior to the

5

recording of the image, and a signed certificate of calibration issued by an independent calibration laboratory. § 21-809(b)(2)-(4). The citation recipient may request the presence and testimony of the systems operator at trial. § 21-809(e)(2).

The speed camera statute references mail in two contexts. First, the statute requires all citations be mailed no later than two weeks after the alleged violation where the recipient is a Maryland resident.[3] §§ 21-809(d)(4), (f)(4). In this context, the statute does not specify the use of any particular mail service or delivery method. The second reference to mail arises when describing procedures for a defense that the registered owner was not driving the vehicle at the time of the alleged violation. The citation recipient must send a sworn statement of such facts by certified mail. § 21-809(f)(3).

B.

Between May 2010 and January 2012, Appellees issued fifty-five citations via first-class mail to Appellants.[4] Appellants paid some of these citations immediately. Other times, Appellants defaulted by neither paying the citations nor

---

[3] Citations to nonresidents must issue within thirty days of the alleged violation. § 21-809(4). Appellants are Maryland residents.

[4] The parties agree that first-class mail was the form of service authorized by ordinances enacted pursuant to § 21-809.

electing trial. In yet other instances, Appellants elected trial in the District Court of Maryland, received an adverse verdict, and still refused to pay. As to all fifty-five citations, the record lacks any indication that Appellants never received any of the mailed citations.

Appellants filed a putative class action in the United States District Court for the District of Maryland. Appellants identified four classes of individuals: (1) anyone who received and immediately paid citations issued by the Town of Forest Heights, (2) anyone who received and immediately paid citations issued by the Town of Riverdale Park, (3) anyone issued citations by the Town of Forest Heights and suffered a default due to nonpayment, and (4) anyone suffering default due to nonpayment of the Riverdale Park citations. Appellants sought relief under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment's Due Process Clause and Article 24 of the Maryland Declaration of Rights.

Without ruling on the class certification motion, the district court granted summary judgment in favor of the towns.[5]

---

[5] Appellees filed a motion for dismissal or, in the alternative, for summary judgment, and the district court considered the motion as one for summary judgment. The plaintiffs filed a cross-motion for partial judgment on the pleadings under Rule 12(c). The district court noted that the plaintiffs' Rule 12(c) motion was premature due to the fact that the pleadings had yet to close. The district court later (Continued)

After rejecting Appellees' jurisdictional and waiver arguments,[6] the district court held that it could not enforce state constitutional laws through § 1983 actions, and that res judicata precluded claims by recipients who suffered default due to nonpayment.[7] Turning to the merits as to those who paid the citations, the district court held that the citations' issuance and contents did not violate substantive or procedural due process. Appellants timely appealed, challenging only the district court's ruling on the merits as to the "paid" classes. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a district court's grant of summary judgment de novo. Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013).

---

explained why, untimeliness notwithstanding, denial on the merits was appropriate.

[6] Appellees unsuccessfully argued that the plaintiffs lacked standing and that the Rooker-Feldman doctrine required abstention by the district court. The district court also rejected Appellees' argument that those plaintiffs who paid the citations waived their right to pursue relief under § 1983.

[7] The district court held that res judicata did not apply to the two "paid" classes because those plaintiffs never received a final judgment on the merits.

Appellants maintain that the automated citations violated both procedural and substantive due process in three ways. First, Appellants argue that first-class mail fails to satisfy due process, and that Appellees must use, at a minimum, certified mail. Second, Appellants contend that citations signed electronically cannot serve as sworn testimony admissible at trial. Third, Appellants claim that the citations' noncompliance with § 21-809(b) violated the process required under Maryland law.

A basic requirement of a 42 U.S.C. § 1983 violation is "the depriv[ation] of a right secured by the Constitution and laws of the United States." Mantavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). Conduct violating state law without violating federal law will not give rise to a § 1983 claim. United States v. Van Metre, 150 F.3d 339, 347 (4th Cir. 1998).

We find Appellants' third challenge, which concerns whether the citations comply with the Maryland statute, misplaced in a § 1983 claim. Even if the citations violated Maryland law, the noncompliance would not violate federal law and thus cannot give rise to § 1983 relief. Clark v. Link, 855 F.2d 156, 163 (4th Cir. 1988); see also Street v. Surdyka, 492 F.2d 368, 371 (4th Cir. 1974) (officer cannot be liable under § 1983 for violating

9

a Maryland arrest law "unless he also violated the federal constitutional law governing . . . arrests"). The alleged noncompliance with the state law is not, as Appellants argue, "so extreme as to result in denial of a constitutionally fair proceeding." See, e.g., Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). The district court properly found that Appellants cannot pursue § 1983 relief for acts that allegedly violate only Maryland law. We similarly limit our consideration to Appellants' first two arguments, which allege violations of the United States Constitution.

IV.

The Fourteenth Amendment prohibits the States from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Due process contains both substantive and procedural components. Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness. Zinermon v. Burch, 494 U.S. 113, 125-26 (1990); Carey v. Piphus, 435 U.S. 247, 259 (1978). We consider each challenge as they relate to procedural due process before addressing substantive due process.

A.

At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950). Notice and the hearing are two distinct features of due process, and are thus governed by different standards. Dusenbery v. United States, 534 U.S. 161, 168 (2002). Proper notice is "an elementary and fundamental requirement of due process," and must be reasonably calculated to convey information concerning a deprivation. Mullane, 339 U.S. at 314; see also Presley v. City of Charlottesville, 464 F.3d 480, 490 (4th Cir. 2006). Mathews set forth the familiar three-step inquiry for determining the adequacy of the opportunity to be heard: a balancing of the private interest and the public interest, along with "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335.

1.

Appellants challenge first-class mail as a constitutionally insufficient means of providing notice. As noted in Dusenbery, Mullane is the appropriate guidepost for this question. Dusenbery, 534 U.S. at 168. Notice must not be a mere gesture, but rather an effort reasonably calculated to effect actual

11

notice.  <u>Mullane</u>, 339 U.S. at 315.  Actual notice is not necessary.  <u>Dusenbery</u>, 534 U.S. at 170-71.  Instead, notice satisfies due process where it either 1) "is in itself reasonably certain to inform those affected" or 2) "where conditions do not reasonably permit such notice, . . . the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes."  <u>Mullane</u>, 339 U.S. at 315 (citations omitted).  The use of first-class mail at issue satisfies this inquiry.

The Supreme Court has routinely recognized that the use of mail satisfies the notice element of due process.  <u>Jones v. Flowers</u>, 547 U.S. 220, 226 (2006); <u>Tulsa Prof'l Collection Servs., Inc v. Pope</u>, 485 U.S. 478, 490 (1988); <u>see</u> <u>also</u> <u>Mullane</u>, 339 U.S. at 319 (recognizing that "the mails today are recognized as an efficient and inexpensive means of communication" that would ordinarily "satisfy a prudent man of business"); <u>cf.</u> <u>Greene v. Lindsey</u>, 456 U.S. 444, 455 (1982) (finding that "[n]otice by mail . . . would surely go a long way toward providing the constitutionally required assurance" of proper notice under due process).  Where the identities of interested parties are known, "a serious effort [must be made] to inform them personally of the [action], at least by <u>ordinary</u> mail to the record addresses."  <u>Mullane</u>, 339 U.S. at 316 (emphasis added); <u>see</u> <u>also</u> <u>Mennonite Bd. of Missions v. Adams</u>,

12

462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable.").

First-class mail was reasonably calculated to confer actual notice upon Appellants. Through their designated agencies, Appellees mailed summonses to the addresses registered in connection with the recorded vehicles. It is difficult to imagine a more reasonable attempt at effectuating actual notice of a driving infraction than the use of registration information collected by the state's transportation agency, the Maryland Motor Vehicle Administration ("MVA"). See Md. Code Ann., Transp. §§ 13-402, 13-403 (requiring residents to register vehicles with the MVA). By using these records, the citations were sent to what was likely to be the most current address for the registered owner. See Md. Code Ann., Transp. § 13-414(a) (requiring owners to notify the MVA within thirty days of address changes). So long as the agency did not have reason to believe that the citation recipient could not be reached at that address, the mailed notice would be sufficient. See Robinson v. Hanrahan, 409 U.S. 38, 39-40 (1972) (notice sent to an address listed with the secretary of state was insufficient because the

13

appellant's incarceration provided the state knowledge that he would not receive mail at his residence).

Repeated success of first-class mail delivery suggests the reasonableness of this method for two reasons. First, an individual that receives timely actual notice, and thus suffers no harm from the method of notice, cannot challenge the constitutionality of said method. See, e.g., Lind v. Midland Funding, L.L.C., 688 F.3d 402, 406 (8th Cir. 2012). Second, due to successful delivery, Appellees lacked any indication, e.g. envelopes returned as undeliverable, that first-class mail could not reasonably provide actual notice. See Jones, 547 U.S. at 229-30 (notice insufficient where the government proceeded with a taking after learning the notice was not delivered); cf. Linn Farms & Timber Ltd. P'ship v. Union Pac. R.R. Co., 661 F.3d 354, 358 (8th Cir. 2011) (additional steps beyond the initial notice attempt were necessary where notice letters were returned as undeliverable). Appellants offer no facts that would have suggested to Appellees that sending mail to the addresses of record would not accomplish actual notice. Appellants' payment of the mailed citations plainly suggests both actual notice and the reasonableness in continuing to use the same notice procedure.

Appellants spend significant time attacking first-class mail, arguing it is sufficient only for in rem proceedings where

14

publication already occurred.  They contend that these in rem procedures do not displace the requirements for in personam actions, which Appellants read as requiring the use of certified mail or other efforts above and beyond first-class mail.  This position is incorrect.  Sufficiency of notice does not turn upon the sometimes malleable and elusive distinctions of in personam, in rem, and quasi in rem, thus we employ the "reasonably calculated to effect actual notice" inquiry regardless of the nature of the action.  Mullane, 339 U.S. at 312-13.  As to their certified mail proposal, Appellants cite Miserandino v. Resort Properties, Inc., 691 A.2d 208 (Md. 1997), for the position that first-class mail is insufficient for providing notice in an action for a money judgment in Maryland.[8]  However, Miserandino did not broadly declare first-class mail insufficient under the Fourteenth Amendment.[9]  See Griffin v. Bierman, 941 A.2d 475, 485-86 (Md. 2008).

---

[8] In Miserandino, the Court of Appeals of Maryland considered whether certain factors permitted the use of "the significantly less certain procedure of first-class mail" instead of ordinary and available methods such as personal service by officials or service by restricted delivery or certified mail.  691 A.2d at 219.  In finding first-class mail impermissible, the court based its conclusion on the fact that a money judgment was at issue and also the Virginia long-arm service statute relevant to those proceedings.  Id.

[9] Even if it meant what Appellants suggest, Misernadino's persuasiveness is severely undercut by subsequent explanations in Jones and Dusenbery that offered further guidance as to what
(Continued)

15

Furthermore, and contrary to Appellants' position, certified mail does not necessarily enhance the likelihood of actual notice; even if it did, such enhancement would not necessarily compel us to make certified mail the constitutional threshold. See Dusenbery, 534 U.S. at 172 ("[O]ur cases have never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced."); cf. Akey v. Clinton Cnty., N.Y., 375 F.3d 231, 235 (2d Cir. 2004) ("As notice by mail is deemed to be reasonably calculated to reach property owners, the state is not required to go further, despite the slight risk that notice sent by ordinary mail might not be received."). The record before us fails to demonstrate a correlation between requiring a recipient's signature upon delivery and an improvement or enhancement of delivery procedures. See Dusenbery, 534 U.S. at 172. Put another way, nothing presented to us indicates that the United States Postal Service delivers certified mail at a rate so superior to that of first-class mail that we should declare first-class mail not reasonably calculated to provide actual notice. See Jones, 547 U.S. at 234-35 (recognizing that "certified mail is dispatched and handled in transit as ordinary

_____

notice efforts are reasonable under procedural due process. See Griffin, 941 A.2d at 482-83, 486.

16

mail," thus certified mail only increases chance of actual notice so long as someone is present to sign for the letter (citations omitted)). First-class mail may actually increase the likelihood of actual notice, as the signature requirement limits when certified mail may be delivered. Id. at 234.

We also decline Appellants' invitation to read Jones as permitting the use of first-class mail only in conjunction with publication after certified mail has proved unfruitful. Courts have upheld the sufficiency of dual mailing schemes, involving the contemporaneous use of first-class and certified mails to send identical notice, even where the certified notices are returned unclaimed. See Griffin, 941 A.2d at 483; Crum v. Mo. Dir. of Revenue, 455 F. Supp. 2d 978, 989 (W.D. Mo. 2006), aff'd sub nom. Crum v. Vincent, 493 F.3d 988 (8th Cir. 2007). It follows that an initial failure of certified mail is not a prerequisite to the sufficiency of first-class mail. Cf. Griffin, 941 A.2d at 484 (explaining that the dual mailing scheme was "not constitutionally infirm merely because [it] d[id] not require the certified mail to be returned as undeliverable prior to requiring [the use of] first class mail"). Without an indication that the first-class mailing attempt could not notify the intended recipient, it is difficult to see how first-class mail, on its own, is insufficient. See Jones, 547 U.S. at 227, 234 (requiring the government to take

17

"additional, reasonable steps to notify Jones, if practicable to do so," where it received "new information" suggesting that "its attempt at notice has failed"); cf. Griffin, 941 A.2d at 484 n.11 ("Our holding would be different, however, had the first-class mail notices been returned undelivered or the certified mail had been returned as something more revealing than 'unclaimed.'"). Accordingly, we find that notice via first-class mail comports with due process.

2.

Appellants' second argument challenges the validity of electronic signatures on citations and the admissibility of the citations as sworn testimony in trial. Appellants contend that the electronic signatures fail to state whether the testimony is sworn based on personal knowledge or information and belief, as required by Maryland law, and thus cannot form testimony under oath. Without reaching the substance of the state law, we find no procedural due process violation.

A procedural due process violation arises not upon the occurrence of a deprivation but rather the failure of due process in connection with the deprivation. Zinermon, 494 U.S. at 125. "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Id. Rather than a meticulous examination of the minutiae of the

18

state's procedural rubric, "procedural due process is simply a guarantee" that there is notice and an opportunity to be heard. Mora v. City of Gaithersburg, Md., 519 F.3d 216, 230 (4th Cir. 2008). Having found notice sufficient, only an evaluation of the opportunity to be heard remains. We now consider 1) the private interest involved, 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) the state interest, including fiscal and administrative burdens imposed by additional process. Mathews, 424 U.S. at 335.

More than twenty years ago, we applied Mathews in evaluating the MVA's deprivation procedures with respect to driver's license suspensions, which are analogous to the hearing procedure under the speed camera program. Plumer v. State of Md., 915 F.2d 927, 931-32 (4th Cir. 1990). The procedure in Plumer required notice to the licensee of a pre-deprivation hearing, setting forth the basis for the suspension, and an opportunity at the hearing to inspect evidence, call witnesses, and present rebuttal evidence. Id. at 932. We found the MVA's procedures not only constitutionally adequate but possibly even more than due process requires. Id.

We find no reason to reach a different conclusion here. Appellants received constitutionally sufficient notice of the

19

citation and potential penalty, and they could elect a trial prior to being assessed the penalty. The notice set forth the basis for the adverse action. The trial, like the hearing in Plumer, permitted Appellants to call witnesses and rebut the state's evidence with their own. Appellants' interest is arguably less than that at stake in Plumer--driving privileges cannot be affected under the speed camera program and the $40 civil penalty is not subject to additional monetary penalties for nonpayment.[10] It is difficult to see how additional process could significantly reduce the chance of erroneous deprivation, especially given the trial mechanism already in place. The state's interest in efficiently enforcing traffic laws would be greatly burdened were we to require additional procedural safeguards, exhausting significant fiscal and administrative resources, that would provide little, if any, additional protection above and beyond that afforded by a trial in the state courts.

In fact, the mere availability of a trial in which to present their grievances undermines Appellants' argument. Notwithstanding the fact that Appellants predicate their

_____

[10] At oral argument, counsel for Appellees explained that failure to pay the speeding citations at issue would not impact an individual's driving record or driving privileges in general. Counsel further noted that no late fees are imposed for failure to pay by the deadline indicated on the citation.

challenge on a violation of state law rather than federal law, "the availability of state procedures [to address Appellants' arguments] is fatal" to their procedural due process claims. Mora, 519 F.3d at 230. Appellants had adequate opportunity in the state courts to argue the sufficiency of electronically-signed citations as an affidavit or otherwise admissible evidence. Having forgone the opportunity to object to the use of electronically-signed citations as evidence, Appellants may not first cry foul in a federal court on this issue. See Mora, 519 F.3d at 230 ("[Mora] cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them.").

B.

We also find that the automated citation procedures do not violate substantive due process. "The touchstone of due process is protection of the individual against arbitrary action of the government." County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998). Only "the most egregious official conduct" qualifies as constitutionally arbitrary. Huggins v. Prince George's Cnty., Md., 683 F.3d 525, 535 (4th Cir. 2012) (quoting Lewis, 523 U.S. at 846). To give rise to a substantive due process violation, the arbitrary action must be "unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate

21

rectification by any post-deprivation state remedies." <u>Rucker v. Harford Cnty.</u>, 946 F.2d 278, 281 (4th Cir. 1991).

Appellants fail to identify any element of the disputed procedures that equate to egregious official conduct unjustified by the state interest in traffic enforcement. Furthermore, assessment of the $40 civil penalty was subject to correction through trial, presentation of witnesses, and rebuttal evidence. Thus, "Maryland's treatment of [Appellants] is hardly arbitrary when the state has given [them] the means to correct the [alleged] errors." <u>Mora</u>, 519 F.3d at 231.

V.

We find that the notice and hearing afforded by Maryland's speed camera statute satisfy due process. Notice sent by first-class mail was reasonably calculated to provide actual notice of the speeding violation and civil penalties. The availability of a trial in state court, upon Appellants' election, provided adequate opportunity to be heard on any objections prior to imposition of the statutory penalties. Any flaws in the citation or enforcement process could have been challenged in the state courts, and Appellants failed to do so. Accordingly, the district court's judgment is

<u>AFFIRMED</u>.