COMMONWEALTH of Pennsylvania,
Appellant

v.

CSX TRANSPORTATION, INC.

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1997.

Decided March 10, 1998.

Mark A. Serge, Greensburg, for appellant.

James M. Becker, Philadelphia, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

McGINLEY, Judge.

The Commonwealth of Pennsylvania (District Attorney)[1] appeals from the order of the Court of Common Pleas of Westmoreland County, Criminal Division (common pleas court), dated January 13, 1997, which granted CSX Transportation, Inc.'s (CSXT) motion to quash. The common pleas court found that the penalty CSXT paid in the civil action was criminal in nature and quashed the criminal information because it believed that permitting the prosecution to proceed would result in a double jeopardy violation of Article I, Section 10 of the Pennsylvania Constitution.

CSXT is a railway transportation company that transports freight along rail lines it owns and operates in the Commonwealth. On August 23, 1989, two CSXT freight trains were traveling on adjacent tracks in Westmoreland County. The trains derailed as they passed each other. Rain and flooding had washed out the tracks. The trains overturned down a steep embankment adjacent to the Youghiogheny River (the Yough). The railway cars were punctured and their contents (cleaning detergent and corn syrup) spilled into the Yough. As a result of the derailment, approximately ten thousand-three hundred and fifty one (10,351) fish were killed, the Yough was polluted, and the McKeesport Water Treatment Plant had to be shut down.

CSXT voluntarily began to remediate the problems caused by the accident, and incurred costs in excess of $460,000.00. CSXT hired five different contractors for the clean up.[2] Additionally, CSXT contributed

---

1. Because the District Attorney of Westmoreland County is prosecuting this matter we will refer to appellant as the District Attorney.

2. CSXT, among other things, did the following: (1) cleaned up a tributary near the spill; (2) removed materials from derailed cars; (3) removed the cars from the area; and (4) sampled

$4500.00 to the West Newton Sportsmen's Association to restock the Yough. Reproduced Record (R.R.) at 95a–212a.

Two years after the accident, the District Attorney filed criminal charges against CSXT. Following the preliminary hearing, the District Attorney filed a Criminal Information charging CSXT with violating Section 2504(a)(2) of the Fish and Boat Code, 30 Pa.C.S. § 2504(a)(2), by allowing a substance deleterious, destructive or poisonous to fish to flow into the Yough. On June 18, 1992, CSXT moved to quash the Criminal Information contending that Section 2504(a)(2), a strict liability criminal provision, violated the due process clauses of the Pennsylvania and United States Constitutions. The common pleas court granted the motion and quashed the Criminal Information on October 21, 1992. On appeal, this Court reversed the common pleas court, holding that Section 2504(a)(2) was not unconstitutional. The Pennsylvania Supreme Court denied CSXT's petition for allowance of appeal. *Commonwealth v. CSX Transportation, Inc.,* 653 A.2d 1327 (Pa.Cmwlth.1995), *appeal denied,* 542 Pa. 675, 668 A.2d 1137 (1995).

While the District Attorney proceeded with criminal charges, on August 22, 1994, the Department of Environmental Resources (Department)[3] filed a civil complaint for violations under the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, 35 P.S. §§ 6018.101—6018.1003, and the Clean Streams Law (CSL), Act of June 22, 1937, P.L.1987, 35 P.S. §§ 691.1—691.1001. Counts I through IV of this complaint arose from the August 23, 1989, train derailment, count V arose from an unrelated and separate incident on September 14, 1990, in Somerset County. On April 21, 1995, the Department amended its civil complaint, and sought to add three additional counts based on alleged facts that arose out of the Somerset County incident. The Department sought to recover statutory civil penalties of up to $10,000.00 per day for each alleged violation of

the CSL based upon the August 23, 1989, spillage and up to $25,000.00 per day for each alleged violation of the SWMA.

On June 26, 1995, while the District Attorney's appeal from the common pleas court order of October 21, 1992, quashing the Criminal Information was still pending, the Department and CSXT reached a settlement of the Department's civil penalty claims before the Environmental Hearing Board (EHB). The parties agreed that the Department would withdraw the civil complaint in exchange for CSXT conveying a parcel of property known as BoWest Yard to the Department, or in the alternative, pay the Department $100,000.00 plus interest. R.R. at 8a–12a. On September 6, 1996, CSXT transferred the BoWest Yard to the Department. The agreement provided that the resolution of the civil penalties constituted a "Consent Order and Adjudication." R.R. at 11a.

On April 29, 1996, CSXT sought to quash the District Attorney's Criminal Information based on double jeopardy. The common pleas court heard oral argument on September 23, 1996. Oral Argument, September 23, 1996; R.R. at 321a. After argument, the parties submitted additional briefs to the common pleas court, and the common pleas court conducted an evidentiary hearing on December 19, 1996. On January 13, 1997, the common pleas court quashed the Criminal Information, stating, "[T]he penalty CSXT has paid in the civil action is criminal in nature... and as such, allowing the within prosecution to proceed would result in a violation of the constitutional prohibition against double jeopardy." Opinion and Order dated January 13, 1997, at 12; R.R. at 297a. The District Attorney appealed to this Court.

■ The issue for our review is whether the common pleas court erred in determining the civil settlement was a penalty and criminal in nature which foreclosed the criminal prosecution.[4]

---

and removed contaminated soil. R.R. at 95a–212a.

**3.** The Department of Environmental Resources is now the Department of Environmental Protection as of the effective date, July 1, 1995. *See,* The Conservation and Natural Resources Act, Act

of June 28, 1995, P.L. 89, 71 P.S. §§ 1340.101–1340.1103.

**4.** Our review is limited to whether the common pleas court committed an error of law or abuse of discretion. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

The District Attorney contends that the agreement does not bar criminal prosecution, that the protection against double jeopardy does not apply in civil proceedings such as those before administrative agencies that result in civil penalties. We must agree.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb...." A comparable clause in the Pennsylvania Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb." Pa. Const. Article 1, Section 10. The Double Jeopardy Clause is designed to protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *United States v. James*, 78 F.3d 851 (3d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77 (U.S.1996); *see Commonwealth v. Johnson*, 435 Pa.Super. 132, 645 A.2d 234 (1994), *affirmed*, 542 Pa. 568, 669 A.2d 315 (1995).

Recently in the case of *Hudson v. United States*, —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), our United States Supreme Court held that the Double Jeopardy Clause did not bar a subsequent criminal prosecution where the administrative proceedings were civil, not criminal. In *Hudson*, the Government imposed monetary penalties and occupational debarment for violation of federal banking statutes on John Hudson, Larry Baresel, and Jack Butler Rackley (Hudson, Baresel and Rackley). Hudson, Baresel, and Rackley were officials at two banks where they made certain unlawful loans which benefited Hudson. The Government took many factors into consideration before assessing penalties of $100,-000 against Hudson and $50,000 each against Baresel and Rackley. In October 1989, Hudson, Baresel and Rackley entered into a "Stipulation and Consent Order" that provided for payments of $16,500, $15,000, and $12,500 respectively. They also "agreed not to 'participate in any manner' in the affairs of any banking institution without the written authorization of the OCC and all other relevant regulatory agencies." *Hudson*, —— U.S. at ——, 118 S.Ct. at 492.

When the Government subsequently indicted Hudson, Baresel, and Rackley for conspiracy, misapplication of bank funds, and making false bank entries (essentially the same conduct involved in the administrative proceedings), Hudson, Baresel, and Rackley moved to dismiss under the Double Jeopardy Clause. The United States Supreme Court stated:

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering*, supra, at 399, 58 S.Ct. at 633. [*Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938).] A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Ward*, 448 U.S. at 248, 100 S.Ct. at 2641. [*United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).] Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.*, at 248–249, 100 S.Ct. at 2641, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).

. . .

The Eighth Amendment protects [individuals] against excessive civil fines, including forfeitures. *Alexander v. United States*, 509 U.S. 544, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993); *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The additional protection afforded by extending double jeopardy protections to proceedings heretofore thought to be civil is more than offset by the confusion created by attempting to distinguish between "punitive" and "nonpunitive" penalties. [*See also*, Pa. Const., Art. I, § 13.]

*Hudson,* —— U.S. at ——, ——, 118 S.Ct. at 493, 495.

By comparison, Section 605 of the SWMA, 35 P.S. § 6018.605 states, in pertinent part:

In addition to proceeding under any other remedy available at law or in equity for a violation of any provision of this act, any rule or regulation of the department or order of the department or any term or condition of any permit issued by the department, the department may assess a *civil penalty* upon a person for such violation. Such a penalty may be assessed whether or not the violation was willful or negligent. (emphasis added).

Section 605 of the CSL, 35 P.S. § 691.605 states:

In addition to proceeding under any other remedy available at law or in equity for a violation of a provision of this act, rule, regulation, order of the department, or a condition of any permit issued pursuant to this act, the department, after hearing, may assess a *civil penalty* upon a person or municipality for such violation. Such a penalty may be assessed whether or not the violation was wilful. (emphasis added).

Clearly, the Department's involvement was limited to a civil complaint for civil penalties. Also, in *Hudson,* the United States Supreme Court cited several factors traditionally relied upon to determine whether the sanction is punitive in purpose or effect:

(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned...

*Hudson,* —— U.S. at ——, 118 S.Ct. at 493, *quoting Kennedy v. Mendoza–Martinez,* 372

U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963). The United States Supreme Court noted:

These factors must be considered in relation to the statute on its face, *id.* at 169, 83 S.Ct. at 568, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, *Ward,* supra, at 249, 100 S.Ct. at 2641–2642 (internal quotation marks omitted).

*Hudson,* —— U.S. at ——, 118 S.Ct. at 493.

In the case at bar, CSXT's sanctions for violating the CSL and SWMA were monetary and did not involve any affirmative disability or restraint.[5] Historically, money penalties are not viewed as punishment. "[T]he payment of fixed or variable sums of money [is a] sanction which has been recognized as enforceable by civil proceedings since the original revenue law of 1789." *Hudson,* —— U.S. at ——, 118 S.Ct. at 496, *quoting Helvering,* 303 U.S. at 400, 58 S.Ct. at 633.

In the present case, the money sanction does not require a finding of scienter. The CSL and SWMA authorize the assessment of a money penalty against any person who violates any of the underlying statutes, without regard to the violator's state of mind. The department may consider the willfulness of the violation in determining the amount of the sanction, but a sanction can be imposed even for mere negligence.

In *Commonwealth v. Wingait Farms,* 547 Pa. 332, 690 A.2d 222 (1997), the Commonwealth sought the forfeiture of Wingait Farms because it was used to facilitate George Reitz's (Reitz) illegal drug sales. Reitz had pled guilty to several drug-related crimes when the Commonwealth initiated forfeiture proceedings. Reitz asserted that the forfeiture proceedings violated the double jeopardy clause of the United States and Pennsylvania Constitutions. Our Pennsylvania Supreme Court considered whether the forfeiture was so punitive as to become criminal in effect or purpose by applying the facts of this case to the seven factors cited in

---

**5.** The term, "affirmative disability or restraint" is normally understood to mean imprisonment.

*Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960).

*Kennedy,* and concluded this case was neither punitive nor criminal for purposes of double jeopardy. It was not error, therefore, to bring a civil forfeiture proceeding after Reitz had been convicted of crimes which involved the same conduct as the forfeiture action. *Id.,* 690 A.2d at 226. As a general rule this Court has held that the Pennsylvania double jeopardy protections do not apply to civil proceedings, such as these before administrative agencies, which result in civil penalties. *Ponce v. Department of Transportation,* 685 A.2d 607 (Pa.Cmwlth.1996), *appeal denied,* 548 Pa. 641, 694 A.2d 625 (1997).

■ The imposition of money sanctions does promote retribution and deterrence, but this in itself is insufficient to render the sanction criminal. "[D]eterrence 'may serve civil as well as criminal goals.'" *Hudson,* —— U.S. at ——, 118 S.Ct. at 496, *quoting United States v. Ursery,* 518 U.S. 267, ——, 116 S.Ct., 2135, 2149, 135 L.Ed.2d 549 (1996). "To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation..." *Hudson,* —— U.S. at ——, 118 S.Ct. at 496. Here, after applying the criteria to determine whether the civil sanction bars the present action we must disagree with the common pleas court's conclusion. The conduct for which CSL and SWMA sanctions are sought may also subject the offender to criminal prosecution. This does not render the money penalties criminally punitive. *see Ursery,* 518 U.S. at ——, 116 S.Ct. at 2149, *United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556, (1993); *Commonwealth v. 5043 Anderson Road,* 699 A.2d 1337 (Pa.Cmwlth.1997), (rejecting "same-conduct" test for double jeopardy purposes).

The amount paid by CSXT in the civil action does not bar additional criminal penalties. Accordingly, we reverse.

### ORDER

AND NOW, this 10th day of March, 1998, the order of the Court of Common Pleas of Westmoreland County, Criminal Division, dated January 13, 1997, is reversed, it appearing the penalty paid in the civil action involving the Department of Environmental Resources does not bar criminal prosecution.

LEADBETTER, J., did not participate in the decision in this case.