In re: Appeal of: Tristram Heinz From a :
Decision of City of Philadelphia        :
Bureau of Administrative Adjudication    :
                                         :    No. 1231 C.D. 2022
Appeal of: Tristram Heinz                :    Argued: April 11, 2024


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                                    FILED:  May 20, 2024


Tristram Heinz, Esquire (Heinz), representing himself, appeals from the Philadelphia County Common Pleas Court's (trial court) October 24, 2022 order denying his appeal from the City of Philadelphia's (City) Office of Administrative Review's (OAR) December 23, 2021 Notice of Determination that found Heinz liable for a $100.00 fine pursuant to Section 3370 of the Vehicle Code (Section 3370).[1]  The issue before this Court is whether Section 3370 is unconstitutional as written and as applied, where it permits the imposition of a civil fine without offering a fine recipient attendant due process protections.  After review, this Court affirms.

Heinz is the registered owner of a motor vehicle bearing Pennsylvania Registration Plate JZX8034.  At 3:45 p.m. on October 6, 2020, the City's automated speed enforcement system (Speed Camera Program) photographed Heinz's vehicle traveling 61 miles per hour in the northbound lane of the 9900 block of Roosevelt Boulevard, which was in excess of the posted 45 mile per hour speed limit.  On October 14, 2020, the City issued a Notice of Violation (Violation Notice) and an

---

[1] 75 Pa.C.S. § 3370 (pertaining to automated speed enforcement system on designated highways).  Section 3370(d)(7) was added by Section 2.1 of Act 38 of 2023, effective February 12, 2024.  Because Heinz was found liable under Section 3370's former language, this Court shall consider the relevant statutory language effective as of the violation date.

accompanying $100.00 fine pursuant to Section 3370, Section 3362 of the Vehicle Code,[2] and Chapter 12-3400 of Title 12 of The Philadelphia Code[3] (Traffic Code).[4]

Heinz timely appealed from the Violation Notice to the OAR, a local agency within the City's Office of the Director of Finance, which provides administrative hearings for, *inter alia*, the adjudication of Speed Camera Program Violation Notice appeals. Heinz requested a hearing pursuant to Section 12-3409 of the Traffic Code.[5] On November 13, 2020, OAR granted Heinz's hearing request.

On December 23, 2021, an OAR Hearing Officer conducted, and Heinz participated in, a telephonic hearing pursuant to the Local Agency Law, 2 Pa.C.S. §§ 551-555, 751-754. At the hearing, Heinz argued, *inter alia*, that: the Violation Notice was not timely issued; the evidence did not establish he was the vehicle's driver; he was denied the constitutional right to confront his accuser; he was denied his constitutional right to a speedy trial; and, although characterized as a civil violation, because the fine was a criminal penalty, criminal procedures should apply. *See* Reproduced Record (R.R.) at 3a. That same day, the Hearing Officer concluded that Heinz was liable for the violation (Decision).

On January 18, 2022, Heinz appealed from the Decision to the trial court. On October 24, 2022, following oral argument, the trial court denied Heinz's appeal. On November 1, 2022, Heinz appealed to this Court.[6] On November 8, 2022, the trial court ordered Heinz to file a Concise Statement of Errors Complained

---

[2] 75 Pa.C.S. § 3362 (imposing maximum speed limits).

[3] The Philadelphia Code, Title 12, *as amended*, added by ordinance effective May 6, 1958.

[4] Chapter 12-3400, added by Bill No. 190184 (approved June 5, 2019), pertains to the "Use of an Automated Speed Enforcement System to Improve Safety on Roosevelt Boulevard."

[5] Section 12-3409(1)-(2) of the Traffic Code requires a hearing be scheduled upon request of a Violation Notice recipient. *See* Traffic Code § 12-3409(1)-(2).

[6] This Court's review is limited to determining whether constitutional rights have been violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *See* Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b).

of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Heinz filed his Rule 1925(b) Statement on November 30, 2022. On July 7, 2023, the trial court issued its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

Heinz argues that Section 3370 (and the Traffic Code Section based thereon) imposes a criminal penalty,[7] and lacks due process protections necessary for criminal penalties. Heinz further asserts that the trial court failed to properly apply the United States (U.S.) Supreme Court-mandated two-pronged analysis in *United States v. Ward*, 448 U.S. 242 (1980), when it determined that Section 3370 imposed a civil penalty. Heinz contends that the trial court's error implicated his rights under the Fifth and Sixth Amendments of the U.S. Constitution (respectively, Fifth Amendment and Sixth Amendment).[8]

Initially, this Court has explained:

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering* [*v. Mitchell*, 303 U.S. 391,] 399 . . . [(1938)]. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Ward*, 448 U.S. at 248 . . . . Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether

---

[7] Section 3370(d)(5) states:

A penalty imposed under this section [(relating to automated speed enforcement system on designated highways)] **shall not be deemed a criminal conviction** and shall not be made part of the operating record under [S]ection 1535 [of the Vehicle Code, 75 Pa.C.S. § 1535] (relating to schedule of convictions and points) of the individual upon whom the penalty is imposed, nor may the imposition of the penalty be subject to merit rating for insurance purposes.

75 Pa.C.S. § 3370(d)(5) (emphasis added).

[8] U.S. CONST. amends. V, VI.

the statutory scheme was so punitive either in purpose or effect," *id*.[] at 248-249, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty[.]" *Rex Trailer Co. v.* [*U.S.*], 350 U.S. 148, 154 . . . (1956).

*Commonwealth v. CSX Transp.*, 708 A.2d 138, 140 (Pa. Cmwlth. 1998) (quoting *Hudson v. U.S.*, 522 U.S. 93, 99 (1997)). The Pennsylvania Supreme Court has observed:

[The U.S. Supreme] Court's traditional two-pronged test. . . first inquires whether the legislature's intent was to impose punishment, and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent. *See Allen v. Illinois*, 478 U.S. 364, 368-69 . . . (1986) (analyzing state legislation); [] *Ward*, 448 U.S. [at] 248-49 . . . (analyzing federal legislation). To make this latter determination, the [U.S.] Supreme Court has used a multi-factored balancing analysis, *see Ward*, 448 U.S. at 249 . . . , involving several considerations that were first enumerated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 . . . (1963) (the []*Mendoza-Martinez* [F]actors[]).

*Commonwealth v. Williams*, 832 A.2d 962, 971 (Pa. 2003) (superseded by statute).

The *Williams* Court explained:

Although "neither exhaustive nor dispositive," this list of [*Mendoza-Martinez* F]actors has proved helpful in considering whether a civil, remedial mechanism "nevertheless provides for sanctions so punitive as to transform what was clearly intended as a civil remedy into a criminal penalty." [] *Ward*, 448 U.S. at 249 . . . (internal quotation marks omitted); *see Smith* [*v. Doe*], [538] U.S. [84,] 92 . . . [(2003)]; *Commonwealth v. McGee*, . . . 744 A.2d 754, 757 ([Pa.] 2000) (stating that the *Mendoza-Martinez* [F]actors are "useful guideposts" in determining whether prison disciplinary confinement constitutes criminal punishment); *Commonwealth v. Wingait Farms*, . . . 690 A.2d 222, 226 ([Pa.] 1997) (applying *Mendoza-Martinez* [F]actors in deeming civil forfeitures non-punitive). The *Mendoza-Martinez* Court identified the following considerations: (1) whether the sanction

4

involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment - retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *See id*. at 168-69.

*Williams*, 832 A.2d at 972-73.

The *Williams* Court expounded:

In applying these [*Mendoza-Martinez* F]actors, the [U.S.] Supreme Court has stated that only the "clearest proof" that a law is punitive in effect may overcome a legislative categorization to the contrary. *See, e.g.*, *Seling v. Young*, 531 U.S. 250, 261 . . . (2001); *Hudson*[,] . . . 522 U.S. [at] 100 . . . ; *Kansas v. Hendricks*, 521 U.S. 346, 361 . . . (1997); *accord Wingait Farms*, . . . 690 A.2d at 226 n.5. While a precise definition of what constitutes the "clearest proof" is rarely articulated, such requirement mirrors the general presumption of validity enjoyed in Pennsylvania by all lawfully enacted legislation. *See Commonwealth v. Stern*, . . . 701 A.2d 568, 571 ([Pa.] 1997). Thus, for present purposes we understand the "clearest proof" standard to indicate that the *Mendoza-Martinez* [F]actors must weigh heavily in favor of a finding of punitive purpose or effect in order to negate the General Assembly's intention that [a statute] be deemed civil and remedial.

*Williams*, 832 A.2d at 973.

Here, the trial court distinguished *Ward* based on the factual differences between Section 311(b)(6) of the Federal Water Pollution Control Act, 33 U.S.C. § 1321(b)(6), referenced in *Ward*, and Section 3362 of the Vehicle Code. Specifically, the trial court reasoned:

The instant case is easily distinguishable from *Ward* and its progeny, as [Heinz] was charged with the single traffic offense of speeding. Moreover, it has been widely

5

accepted that speed enforcement cameras had been installed along the Roosevelt Boulevard in response to its correct designation as one of the most dangerous roads to travel particularly due to excess speeding. The intent behind camera installation was to prevent accidents and the resulting injuries and deaths that have routinely occurred along the [Roosevelt] Boulevard. To date, there has been zero evidence of any punitive effect of imposition of the minor $100.00 fine. Moreover, zero points or driving restrictions are attached to the issuance of the subject violation.

At present, there are no criminal penalties attached to the referenced [S]ection 3362 . . . of the . . . Vehicle Code. If[,] on the other hand[,] [Heinz] had been charged with reckless driving or driving under the influence of alcohol or narcotics, then constitutional protections would have applied. Gratefully, [Heinz's] conduct had not risen to those levels and charges such as those do not apply.

Rule 1925(a) Op. at 6-7 (R.R. at 49a-50a).

Given Heinz's challenge to Section 3370's characterization of the fine as a civil penalty, this Court does not agree with the trial court that the factual differences between the instant matter and *Ward* are sufficient to conclude that Section 3370 is a civil penalty. Rather, this Court must apply the *Mendoza-Martinez* Factors to determine "'whether the statutory scheme was so punitive either in purpose or effect,' *Ward*, 448 U.S. at 248-49, as to 'transform what was clearly intended as a civil remedy into a criminal penalty.' *Ward*, 448 U.S. at 248-49." *CSX Transp.*, 708 A.2d at 140 (quoting *Hudson*, 522 U.S. at 99); *see, e.g.*, *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020); *Wingait Farms*; *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492 (Pa. Cmwlth. 2018); *Kozieniak v. Dep't of Transp., Bureau of Driver Licensing*, 100 A.3d 326 (Pa. Cmwlth. 2014).

At the outset, Section 3370 imposes numerous guidelines for the Speed Camera Program. It provides, in relevant part:

**(b) Owner liability**. -- For each violation under this section, the owner of the vehicle shall be liable for the penalty imposed unless the owner is convicted of the same violation under another section of this title or has a defense under subsection (g).

**(c) Certificate as evidence**. -- A certificate, or a facsimile of a certificate, based upon inspection of recorded images produced by an automated speed enforcement system and sworn to or affirmed by a police officer employed by the city of the first class[9] shall be prima facie evidence of the facts contained in it. The [C]ity must include written documentation that the automated speed enforcement system was operating correctly at the time of the alleged violation. A recorded image evidencing a violation of [S]ection 3362 [of the Vehicle Code] shall be admissible in any judicial or administrative proceeding to adjudicate the liability for the violation.

**(d) Penalty**. -- The following shall apply:

(1) The penalty for a violation under subsection (a) shall be a fine of $150[.00] unless a lesser amount is set by ordinance. The ordinance may create fines for first offense, second offense and third and subsequent offenses, but no single fine shall exceed $150[.00].

(2) A penalty is authorized only for a violation of this section if each of the following apply:

(i) At least two appropriate warning signs are conspicuously placed at the beginning and end and at two-mile intervals of the designated highway notifying the public that an automated speed enforcement device is in use.

(ii) A notice identifying the location of the automated speed enforcement system is posted on the [D]epartment [of Transportation]'s [(Department)]

---

[9] The City is the Commonwealth's only city of the first class.

publicly accessible Internet website throughout the period of use.

. . . .

(5) A penalty imposed under this section shall not be deemed a criminal conviction and shall not be made part of the operating record under [S]ection 1535 [of the Vehicle Code] (relating to schedule of convictions and points) of the individual upon whom the penalty is imposed, nor may the imposition of the penalty be subject to merit rating for insurance purposes.

(6) No surcharge points may be imposed in the provision of motor vehicle insurance coverage. Penalties collected under this section shall not be subject to [Section 3571 or 3573 of the Judicial Code,] 42 Pa.C.S. §[§] 3571 (relating to Commonwealth portion of fines, etc.) or 3573 (relating to municipal corporation portion of fines, etc.).

**(e) Liability**. -- Driving in excess of the posted speed limit along the designated highway by 11 miles per hour or more is a violation of this section.

75 Pa.C.S. § 3370(b)-(e).

Section 3370(f) also provides numerous limitations, including, in relevant part:

(2) . . . . Recorded images collected as part of the automated speed enforcement system must only record traffic violations and may not be used for any other surveillance purposes, but may include video of the area enforced when triggered by a violation. The restrictions set forth in this paragraph shall not be deemed to preclude a court of competent jurisdiction from issuing an order directing that the information be provided to law enforcement officials if the information is reasonably described and is requested solely in connection with a criminal law enforcement action.

(3) Notwithstanding any other provision of law, information prepared under this section and information relating to violations under this section which is kept by the city of the first class . . . shall be for the exclusive use

8

of the city . . . for the purpose of discharging their duties under this section and under any ordinances and resolutions of the city. The information shall not be deemed a public record . . . . The information shall not be discoverable by court order or otherwise, nor shall it be offered in evidence in any action or proceeding which is not directly related to a violation of this section or any ordinance or resolution of the city. The restrictions set forth in this paragraph shall not be deemed to preclude a court of competent jurisdiction from issuing an order directing that the information be provided to law enforcement officials if the information is reasonably described and is requested solely in connection with a criminal law enforcement action.

(4) Recorded images . . . shall be destroyed within one year of final disposition of any recorded event except that images subject to a court order under paragraph (2) or (3) shall be destroyed within two years after the date of the order, unless further extended by court order. . . .

(5) Notwithstanding any other provision of law, registered vehicle owner information obtained as a result of the operation of an automated speed enforcement system . . . may not be used for any purpose other than as prescribed in this section.

75 Pa.C.S. § 3370(f).

In addition, Section 3370(g) provides the applicable defenses thereto:

(1) It shall be a defense to a violation under this section that the person named in the notice of violation was not operating the vehicle at the time of the violation. The owner may be required to submit evidence that the owner was not the driver at the time of the alleged violation. The city of the first class may not require the owner of the vehicle to disclose the identity of the operator of the vehicle at the time of the violation.

(2) If an owner receives a notice of violation pursuant to this section of a time period during which the vehicle was reported to a police department of any state or municipality as having been stolen, it shall be a defense to a violation under this section that the vehicle has been reported to a police department as stolen prior to the time

9

the violation occurred and had not been recovered prior to that time.

(3) It shall be a defense to a violation under this section that the person receiving the notice of violation was not the owner of the vehicle at the time of the offense.

(4) It shall be a defense to a violation under this section that the device being used to determine speed was not in compliance with [S]ection 3368 [of the Vehicle Code] (relating to speed timing devices) with respect to testing for accuracy, certification or calibration.

75 Pa.C.S. § 3370(g). Moreover, the Department must approve any camera system used as part of the Speed Camera Program. *See* 75 Pa.C.S. § 3370(h).

The Speed Camera Program's system administrator must send a notice of violation by first-class mail to the vehicle's registered owner within the later of 30 days after the violation or 30 days after the vehicle owner's identity is determined. *See* 75 Pa.C.S. § 3370(k), (l). A recipient of a notice of violation may either admit responsibility and pay the fine or request a hearing to contest liability. *See* 75 Pa.C.S. § 3370(m)(1), (n)(1). The Department must use fines received from the Speed Camera Program for the Transportation Enhancement Grants Program (relating to automated red-light enforcement systems in first class cities). *See* 75 Pa.C.S. § 3370(m)(2). Hearings are held before a hearing officer designated by the City and are conducted in accordance with the Administrative Agency Law, 2 Pa.C.S. §§ 501-508, 701-704, and the Local Agency Law. *See* 75 Pa.C.S. § 3370(n). Decisions sustaining Violation Notices may be appealed to the courts of common pleas.

Although Pennsylvania appellate courts have not yet addressed constitutional challenges to Section 3370, numerous federal and state courts have considered such challenges to similar statutes. While not binding on this Court,[10] this Court finds them instructive. In particular, the U.S. Courts of Appeals for the Fifth and Eleventh Circuits have considered the nature of similar statutes.

In *Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206 (11th Cir. 2019), motor vehicle operators cited for red-light camera violations challenged the Phenix City ordinance's constitutionality. The Eleventh Circuit Court of Appeals explained:

> Because [the a]ppellants allege that the ordinance's constitutional infirmity stems from its failure to provide adequate procedures to challenge a citation, the threshold question is whether the red-light ordinance provides for civil sanctions or criminal punishment. Only after making that determination can we glean whether the procedures provided in the ordinance are constitutionally sufficient.

*Id*. at 1217.

Considering *Hudson*, the *Worthy* Court observed:

> [T]he Alabama legislature explicitly labeled the sanction as civil. It specifically authorized "automated traffic light enforcement in the City of Phenix City, Alabama, *as a civil violation*." The legislature then described the penalty for this civil violation as "the payment of a *civil* fine, the enforceability of which shall be accomplished through *civil* action." The legislature went on, stating that "[t]he

---

[10]   This Court has explained:

> [This Court is] bound by decisions of the [U.S.] Supreme Court . . . .. Although we are not bound by the decisions of federal district courts, federal circuit courts, or the courts of other states in applying federal substantive law, we may cite such decisions when they have persuasive value.

*In re Appeal of The Gun Range, LLC*, 311 A.3d 1242, 1248 n.8 (Pa. Cmwlth. 2024) (citation omitted).

11

> prosecution of a *civil* violation created hereby shall carry reduced evidentiary requirements and burden of proof . . . and [in] no event shall an adjudication of liability for a *civil* violation be punishable by a criminal fine or imprisonment." Additionally, the ordinance itself provides that a red-light violation caught on camera shall carry with it "a *civil* penalty of $100.00." And the ordinance also devotes an entire section to describing the effect of a violation - stating, among other things, that the civil penalty is "not a criminal conviction for any purpose" and that no "record of [the] civil penalty made under [the ordinance will] be listed, entered, or reported on any criminal record or driving record." The text thus makes clear that both the Alabama legislature and Phenix City intended for the red-light-camera ordinance to be civil in nature.

*Id*. at 1217-18 (no citations in original).

Nonetheless, the *Worthy* Court noted that, in accordance with *Hudson*, it must inquire further to "ensure that the sanction prescribed in the ordinance is not a criminal penalty masquerading as a civil sanction." *Worthy*, 930 F.3d at 1218. The *Worthy* Court then examined the *Mendoza-Martinez* Factors and concluded that the first and second factors

> suggest that this penalty is civil because monetary penalties do not involve an affirmative disability or restraint and they have not historically been regarded as punishment. *See* [*Hudson*] (noting that a monetary fine does not constitute an affirmative restraint because such a sanction is "certainly nothing approaching the infamous punishment of imprisonment" (internal quotation marks omitted) (quoting *Flemming v. Nestor*, 363 U.S. 603, 617, . . . (1960))); *id*. ("[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as [enforceable] by civil proceedings since the original revenue law of 1789."[11] (second and third alterations in original) (quoting *Helvering* . . . , 303 U.S. [at] 400, . . . (1938))).

---

[11] Act of July 31, 1789, c. 5, s 36, 1 Stat. 29, 47.

*Worthy*, 930 F.3d at 1218.

The *Worthy* Court determined that because the ordinance did not have a scienter requirement, the third *Mendoza-Martinez* Factor weighed towards a conclusion that the penalty was civil. The Court further concluded that the fourth *Mendoza-Martinez* Factor - whether the ordinance's purpose is to punish - did not weigh in favor of the fine being a criminal penalty since a "scheme . . . designed to deter . . . violations . . . alone is not sufficient to transform a civil penalty into a criminal sanction." *Id.* at 1219.

The *Worthy* Court also reasoned that "the fifth [*Mendoza-Martinez* F]actor - whether the regulated behavior is already a crime - does not weigh in favor of finding that the civil penalty is a criminal punishment." *Id.* Explaining its basis for that conclusion, the *Worthy* Court considered related consequences of conduct underlying the red-light violation at issue before it, many of which are like those underlying Heinz's Violation Notice at issue before this Court.

> While a traditional red-light violation in Alabama can result in a misdemeanor conviction, *see* [Section 32-5A-8 of the Alabama Code,] Ala. Code § 32-5A-8, that alone does not render a sanction criminally punitive, *see* [*United States v.*] *Melvin*, 918 F.3d [1296,] 1300 [(11th Cir. 2017)] ("[T]hat the conduct triggering penalties is also criminal in nature is alone 'insufficient to render the money penalties . . . criminally punitive.'" (quoting *Hudson*, 522 U.S. at 105, . . . )). The vast difference between the punishments provided for a red-light violation under the criminal statute and under the ordinance is illuminating. As noted above, the civil penalty assessed under the ordinance does not result in a conviction, nor is it reported on a driving record. On the other hand, violating the criminal statute can result in a misdemeanor conviction, which can lead to a series of increasing fines and even imprisonment. And obviously such a conviction would carry with it the usual repercussions inherent in criminal traffic convictions, including a report of the conviction on the driver's criminal and driving records. That the

13

ordinance provides for a far less severe punishment than the criminal statute further indicates that the civil penalty is not a criminal punishment.

*Worthy*, 930 F.3d at 1219 (citation omitted).

With respect to the final two *Mendoza-Martinez* Factors, the *Worthy* Court stated:

Evaluating the sixth [*Mendoza-Martinez* F]actor requires examining whether the sanction has an alternative, non-criminal purpose and whether the sanction is rationally related to that non-criminal purpose. Here, an alternative purpose is the promotion of public safety and the reduction of accidents caused by red-light violations. *See Smith . . .* (noting that public safety is a legitimate, nonpunitive purpose for a legislative enactment); *accord United States v. W.B.H.*, 664 F.3d 848, 859 (11th Cir. 2011). And a $100.00 civil penalty is certainly rationally related to that alternative purpose, as the reasonable fine could deter motorists from running red lights, thereby reducing accidents and promoting public safety.

Finally, the seventh [*Mendoza-Martinez* F]actor probes whether the penalty is "excessive in relation to th[e] alternative purpose." *Cole v. U.S. Dep't of Agric.*, 133 F.3d 803, 807 (11th Cir. 1998). A modest $100.00 fine is not excessive in relation to the goal of promoting public safety and reducing traffic accidents. These final two factors thus further indicate that the ordinance provides for a civil sanction and not a criminal punishment.

*Worthy*, 930 F.3d at 1219.

In *Bevis v. City of New Orleans*, 686 F.3d 277 (5th Cir. 2012), the Fifth Circuit Court of Appeals similarly considered whether an ordinance providing for a digital camera traffic enforcement program was civil in nature. The *Bevis* Court described the relevant camera enforcement program as follows:

The [c]ity engaged a private contractor, [d]efendant-[a]ppellee American Traffic Solutions ([]ATS[]) to install and maintain the cameras. ATS staff view the footage and forward potential violations to the New Orleans Police

14

Department, whose officers then decide whether to issue a citation to the vehicle's owner. The [subject o]rdinance states that "[t]he imposition of a civil penalty . . . is an alternative method of detecting and deterring red-light violations and speeding." Accordingly, no fine may be imposed if at the time of the violation the operator of the vehicle was pulled over and either arrested or issued a traffic ticket. Also, no fine may be imposed on the vehicle's owner if the vehicle was reported stolen and had not been recovered at the time the violation occurred. If the police decide to issue a citation, a notice is sent to the vehicle's registered owner charging that the violation occurred and stating the amount of the fine. The fine is $105[.00] for entering an intersection against a red light, and $300[.00] for overtaking a school bus while it's [sic] stop signals are active. For speeding, the fine is between $45[.00] and $205[.00], depending on the excess speed. The fine can also include up to $80[.00] in enforcement costs.

The notice relates the date, time, and location of the violation, and it includes images from the video recording of the violation, and a website address where the full video can be viewed. The notice also explains procedures for contesting the fine, and procedures for payment by mail, telephone, or through the website. The owner may contest the violation by appearing before an administrative officer on or before a hearing date stated in the notice. If the hearing date passes and the owner has failed to either pay the fine or to appear and contest liability, then $75[.00] is added to the fine and the [c]ity may initiate collection efforts. The notice is presumed to have been received by the owner five days after it was sent, but it is an affirmative defense if "[t]he person who received the notice of violation was not the owner of the motor vehicle at the time of the violation . . . ."

An administrative officer employed by the city presides at the hearing, where the owner may "respond and present evidence on all issues of fact involved and argument on all issues of law involved." The owner may request that witnesses be subpoenaed, and examine witnesses who testify. No mens rea is required for liability. [The o]wner and operator are jointly and severally liable for the fine, except that it is an affirmative defense if the operator was

15

driving the vehicle without the owner's consent. A non-operating owner who is held liable may recover the amount of the fine from the operator. The owner may seek judicial review of an adverse decision by filing a petition in the Orleans Parish Civil District Court within 30 days.

*Id*. at 279-80 (no citations in original).

The *Bevis* Court reasoned:

The only [*Mendoza-Martinez* F]actor favoring [the p]laintiffs' position is the fact that some of the conduct that violates the ordinance would also be punishable as a crime, if done with the requisite mental state. That is not enough to overcome legislative intent. [] *Ward*, 448 U.S. [at] 249-50 . . . . We agree with the district court that the [o]rdinance imposes a civil penalty.[12]

*Bevis*, 686 F.3d at 280 (footnote omitted).

Here, considering the first two *Mendoza-Martinez* Factors, the Speed Camera Program provides only for monetary fines. As the *Worthy* Court observed, "monetary penalties do not involve an affirmative disability or restraint and they have not historically been regarded as punishment." *Worthy*, 930 F.3d at 1218. With respect to the third *Mendoza-Martinez* Factor, the Speed Camera Program requires no scienter. Rather, a violation occurs when a vehicle operator drives "in excess of the posted speed limit along the designated highway by 11 miles per hour or more . . . ." 75 Pa.C.S. § 3370(e). Thus, the third *Mendoza-Martinez* Factor weighs in favor of a civil penalty. Regarding the fourth *Mendoza-Martinez* Factor, the program is designed to deter speeding on the designated highway. Such intent is

---

[12] The *Worthy* and *Bevis* Courts' holdings are consistent with federal court decisions in other jurisdictions which have concluded that similar penalties were civil in nature. *See Balaban v. City of Cleveland*, 2010 U.S. Dist. LEXIS 10227, 2010 WL 481283 (N.D. Ohio, E. Div. 2010); *Ware v. Lafayette City-Parish Consol. Gov't*, 2009 U.S. Dist. LEXIS 97836, 2009 WL 5876275 (W.D. La. 2009); *Shavitz v. City of High Point*, 270 F. Supp. 2d 702 (M.D. N.C. 2003), *vacated on other grounds sub nom. Shavitz v. Guilford County Bd. of Educ.*, 100 F. App'x 146 (4th Cir. 2004).

16

evidenced by the mandated posted signs informing drivers of the Speed Camera Program before drivers enter the subject area. Notice is also posted on the Department's website. As the *Worthy* Court observed: "a "scheme . . . designed to deter . . . violations . . . alone is not sufficient to transform a civil penalty into a criminal sanction." *Id*. at 1219. Accordingly, the fourth *Mendoza-Martinez* Factor weighs in favor of the Speed Camera Program imposing a civil penalty.

With respect to the fifth *Mendoza-Martinez* Factor, this Court acknowledges that the General Assembly has established that exceeding the speed limit shall be a summary offense. *See* 75 Pa.C.S. § 3362. Nonetheless, as the *Worthy* Court observed, "the civil penalty assessed under the ordinance does not result in a conviction, nor is it reported on a driving record." *Worthy*, 930 F.3d at 1219. This distinction suggests that the Speed Camera Program imposes a civil penalty. With respect to the final two *Mendoza-Martinez* Factors, this Court notes that the Speed Camera Program and the attendant fine have an alternative, non-criminal purpose - to preserve public safety, and the threat of a fine to encourage compliance with the posted speed limits is rationally related to that non-criminal purpose. Finally, regarding the seventh *Mendoza-Martinez* Factor, this Court concludes that the fine imposed is "modest [and] is not excessive in relation to the goal of promoting public safety and reducing traffic accidents." *Worthy*, 930 F.3d at 1219. Because each factor weighs in favor of the Speed Camera Program imposing a civil penalty, this Court concludes that the penalty is indeed civil.[13]

Importantly, the U.S. Supreme Court has explained:

The distinction between a civil penalty and a criminal penalty is of some constitutional import. The Self-

---

[13] Other state courts have reached the same conclusion regarding similar ordinances and statutes. *See Glass v. City of Montgomery*, 360 So.3d 1021 (Ala. 2022); *City of Richardson v. Bowman*, 555 S.W.3d 670 (Tex. App. 2018); *Krieger v. City of Rochester*, 978 N.Y.S.2d 588 (N.Y. 2013); *Titus v. City of Albuquerque*, 252 P.3d 780 (N.M. Ct. App. 2011).

17

Incrimination Clause of the Fifth Amendment, for example, is expressly limited to "any criminal case." [U.S. Const. amend. V.] Similarly, the protections provided by the Sixth Amendment are available only in "criminal prosecutions." [U.S. Const. amend. VI.] Other constitutional protections, while not explicitly limited to one context or the other, have been so limited by decision of this Court. *See, e.g.*, *Helvering*[,] . . . (Double Jeopardy Clause [of the Fifth Amendment] protects only against two criminal punishments); *United States v. Regan*, 232 U.S. 37, 47-48 (1914) (proof beyond a reasonable doubt required only in criminal cases).

*Ward*, 448 U.S. at 248. Having concluded that Section 3370 is not a criminal statute but, rather, that it imposes civil penalties, Heinz's claims that his rights under the Fifth and Sixth Amendments were violated to the extent he has asserted them to this Court fail.[14]

Heinz also asserts that he was denied due process protections. "The Fourteenth Amendment to the [U.S.] Constitution [(Fourteenth Amendment)] provides that no state may 'deprive any person of life, liberty, or property, without due process of law.' U.S. Const. amend. XIV." *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669, 676 (Pa. 2017).

This Court has stated:

"[T]he basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Com*[*monwealth*] *v. Turner*, . . . 80 A.3d 754, 764 ([Pa.] 2013). Procedural due process is a flexible concept that "imposes only such procedural safeguards as the situation warrants." *In re McGlynn*, 974 A.2d 525, 531 (Pa. Cmwlth. 2009).

---

[14] Although Heinz's brief does mention the Fifth and Sixth Amendments and his arguments to the OAR relating thereto, the majority of Heinz's brief to this Court focuses on his argument that Section 3370 imposes a criminal penalty, that the trial court failed to properly apply *Ward*, and that his due process rights were violated.

*Water Polo I, L.P. v. W. Hanover Twp. Sewer Auth.*, 301 A.3d 1009, 1022-23 (Pa. Cmwlth. 2023).

Here, Section 3370 includes numerous procedural due process protections. A Violation Notice must be sent by first-class mail to the vehicle's registered owner within 30 days of the violation. The maximum fine imposed under Section 3370 is $150.00, which may not be imposed unless the vehicle operator exceeds the posted speed limit by at least 11 miles per hour. Further, the vehicle's owner will not be liable for Section 3370's penalty if he has been convicted of such violation under another Vehicle Code section. The penalty is not deemed a criminal conviction, and no points or insurance consequences may be imposed. A notice of violation recipient may request a hearing with the OAR to challenge the notice of violation. A notice of violation recipient may defend him or herself by providing evidence that the recipient was not the driver, that the vehicle had been reported stolen, that the notice of violation recipient was not the vehicle owner at the time of the incident, or that the device used to detect the violation was not compliant with the law. Hearings are held before a City hearing officer and are conducted in accordance with the Administrative Agency Law and the Local Agency Law. Decisions sustaining violations may be appealed to common pleas courts.

> "The substantive protections of due process are meant to protect citizens from arbitrary and irrational actions of the government." *Gresock v. City of Pittsburgh Civ. Serv. Comm'n*, 698 A.2d 163, 169 (Pa. Cmwlth. 1997). Like procedural due process, "for substantive due process rights to attach[,] there must first be the deprivation of a[n] . . . interest that is constitutionally protected." *Khan v. State Bd. of Auctioneer Exam'rs*, . . . 842 A.2d 936, 946 ([Pa.] 2004).

*Water Polo I*, 301 A.3d at 1023-24.

In *Shoul*, the Pennsylvania Supreme Court explained:

Claims that a statute violates either the federal or state right to substantive due process are subject to the following "means-end review":

> [C]ourts must weigh the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize the relationship between the law (the means) and that interest (the end). Where laws infringe upon certain rights considered fundamental, such as the right to privacy, the right to marry, and the right to procreate, courts apply a strict scrutiny test. Under that test, a law may only be deemed constitutional if it is narrowly tailored to a compelling state interest.
>
> Alternatively, where laws restrict . . . other rights . . . which are undeniably important, but not fundamental, . . . courts apply a rational basis test.

*Nixon* [*v. Dep't of Pub. Welfare*], 839 A.2d [277,] 286-87 & n.15 [(Pa. 2003)] (collecting federal and state cases).

Thus, while statutes abridging fundamental rights are subject to strict scrutiny and are constitutional only where they are narrowly tailored to a compelling governmental interest, statutes limiting other rights are subject to a rational basis test. Notably, the federal rational basis test differs significantly from our own in terms of the degree of deference it affords to legislative judgment. The [U.S. Supreme] Court has described its rational basis test, albeit in the context of a claim that a statute violated the Fourteenth Amendment's Equal Protection Clause, as broadly deferential[.]

*Shoul*, 173 A.3d at 676-77.

Notwithstanding the aforementioned federal jurisprudence, the *Shoul* Court emphasized:

> This Court, by contrast, applies what we have deemed a "more restrictive" test. *Nixon*, 839 A.2d at 287 n.15. Specifically,
>
>> a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive[,] or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests[,] the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.
>
> *Gambone v. Commonwealth*, . . . 101 A.2d 634, 636-37 ([Pa.] 1954) (citation and footnotes omitted) . . . . Thus, under our state charter, we must assess whether the challenged law has "a real and substantial relation" to the public interests it seeks to advance, and is neither patently oppressive nor unnecessary to these ends. Nevertheless, we bear in mind that, although whether a law is rationally related to a legitimate public policy is a question for the courts, the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements.

*Shoul*, 173 A.3d at 677-78. Accordingly, this Court must consider whether Section 3370 has "a real and substantial relation to the public interests it seeks to advance[.]" *Id.* at 678.

Section 3370's legitimate public interest is to deter speeding on the designated highway. In the furtherance of such purpose, it requires that the City post two conspicuous warning signs notifying the public that an automated speed enforcement device is in use. *See* 75 Pa.C.S. § 3370(d)(2)(i). Additionally, Section 3370's fine could have a deterrent effect. *See Worthy*, 930 F.3d at 1219 (concluding that "a $100.00 civil penalty is certainly rationally related to that alternative purpose, as the reasonable fine could deter motorists from running red lights, thereby reducing accidents and promoting public safety"). Further, this Court concludes that a $100.00 or $150.00 fine with no further penalty or criminal liability, and no impact on an individual's driving or insurance records, is not oppressive.[15]

For all of the above reasons, the trial court's order is affirmed.[16]

_____
ANNE E. COVEY, Judge

---

[15] Heinz's due process challenges are like those raised and rejected in numerous federal appellate cases. *See Downey v. City of Toledo, Ohio*, 2021 U.S. App. LEXIS 11173, 2021 WL 5143918 (6th Cir. 2021); *Knutson v. Vill. of Lakemoor*, 932 F.3d 572 (7th Cir. 2019); *Worthy*; *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597 (7th Cir. 2016); *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140 (4th Cir. 2014); *Mendenhall v. City of Akron*, 374 F. App'x 598 (6th Cir. 2010); *Idris v. City of Chi., Ill.*, 552 F.3d 564 (7th Cir. 2009); *Bevis*; *Agomo v. Fenty*, 916 A.2d 181 (D.C. 2007).

[16] "[This Court] 'may affirm on other grounds where grounds for affirmance exist.'" *FP Willow Ridge Assocs., L.P. v. Allen Twp.*, 166 A.3d 487, 496 n.11 (Pa. Cmwlth. 2017) (quoting *Kutnyak v. Dep't of Corr.*, 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000)).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of: Tristram Heinz From a :
Decision of City of Philadelphia :
Bureau of Administrative Adjudication :
                                       :     No. 1231 C.D. 2022
Appeal of: Tristram Heinz :

## O R D E R

AND NOW, this 20th day of May, 2024, the Philadelphia County Common Pleas Court's October 24, 2022 order is AFFIRMED.

_____
ANNE E. COVEY, Judge